Harris *vs.* Wynne.

---

No. 54.—JOHN W. HARRIS, plaintiff in error, *vs.* THOMAS WYNNE, defendant.

[1.] The several Statutes of Georgia, giving to securities the control of Executions which they have paid off, to enable them to re-imburse themselves out of their principals, extend to the executors and administrators of deceased securities.

[2.] Where judgment has been rendered, and execution issued, against A. as principal, and B. as executor of C. as security, and the *fi. fa.* is discharged by B.: *Held* that when B. attempts to obtain satisfaction out of A. the principal debtor, it is not competent for A. to prove that B. was executor in his own wrong only, and not the rightful executor of C.  Would it avail him if he could?  *Quere.*

Affidavit of Illegality, in Warren Superior Court.  Tried before Judge SAYRE, April Term, 1848.

For the facts of the case, refer to the decision of the Court.

STEPHENS & BIRD, for plaintiff in error, made the following points:

1st. Our Statutes giving the surety, who has paid off a *fi. fa* control of it, for remuneration out of the principal, are in derogation of the Common Law, and must be strictly construed against the enlarged right; and the executors and administrators of sureties, not being mentioned by the Acts, are not to be held within their benefit. *The Merchant's Bank of Macon vs. Central Bank,* 1 *Kel.* 433.

2d. Said Statutes were not intended to establish new rights, nor to confer old ones on new persons, but only to furnish a new remedy for the same rights to the same persons; and an executor *de son tort,* not having at Common Law the right to collect the debts, has not acquired the right to collect in the manner pointed out by Statute. *Mitchell vs. Lunt,* 4 *Mass.* 654. 5 *Am. Com Law,* 234. *Prince's Dig.* 461, 470.

3d. An estoppel is waived by taking issue on the fact, and *a fortiori* by a solemn admission of the fact on trial. 1 *Phil. Ev.* 322. *Burdit vs. Burdit,* 2 *A. K. Marsh,* 143.

4th. The judgment was not an estoppel, because it was not between the same parties, had never allowed the party an opportunity to defeat its rendition by showing what was the truth, was not offered to prove precisely the same fact, and while that fact was to be proved for a different purpose, had not emanated from a Court of exclusive jurisdiction. 1 *Phil. Ev.* 323, 327, 335. 1 *Starkie Ev.* 219, 223, 221, 233. *Crandall vs. Gallup,* 12 *Conn.* 365. *Smith vs. Sherwood,* 4 *Conn.* 276. *Prince's Dig.* 443.

CONE, for the defendant in error, made the following points:

1st. Where an executor or administrator of a deceased security pays off the debt, he is entitled to the same remedies against the principal, that the security would be, if in life. *Prince's Dig.* 436, 461, 509.

2d. The same is true in relation to an executor, *de son tort.*

3d. Where a person appears, on the face of a judgment ren-

Harris *vs.* Wynne.

dered against him, to be a rightful executor, it is not competent to prove by parol evidence, that he is executor *de son tort.* 1 *Kelly,* 12.

*By the Court.*—LUMPKIN, J. delivering the opinion.

On the 9th of October, 1847, a judgment was entered up in the Superior Court of Warren County, in favor of Thomas P. Allen, against John W. Harris, as principal, and Thomas Wynne, as executor of Thomas P. Harris, deceased, as security, for $142 00, with interest and cost of suit.　On the 6th of December, an execution was issued thereon, in conformity to the judgment, which was satisfied in full by Thomas Wynne, one of the defendants, and so receipted by G. G. Putnam, Esquire, plaintiff's attorney. The *fi. fa.* was then levied on the property of John W. Harris, the principal, at the instance of Wynne.　Harris made oath, in terms of the law, that this precept was proceeding illegally against him, for the reason that Wynne was executor in his own wrong only, and not the rightful executor of Thomas P. Harris, deceased, and consequently, that he was not entitled to the control of the execution.

The Court below dismissed the illegality, upon the hearing, and that decision is the foundation of this writ of error.

Two questions seem to be made by the record—

1st.　Do the provisions of the several Statutes of this State, giving to sureties who have paid off the same, the control of executions, to re-imburse themselves out of their principals, extend to the executors and administrators of deceased securities?

And 2ndly.　Can it be shown that one against whom judgment has been rendered and execution issued as executor, generally as of the deceased surety, was executor in his own wrong only, and not a rightful executor?

[1.]　Upon both grounds, we concur in the judgment rendered by the Circuit Court.　To restrict the various Acts passed by the Legislature, for the relief of securities to the original party, and not to extend them to the legal representatives of those who are deceased, would be to strip them of half their benefit.　If an executor or administrator can sue out a *scire facias*, to revive a dormant judgment in favor of the testator or intestate, why should they not control an execution, which they have discharged as se-

curity, to re-imburse the estate ?    No satisfactory reason has been offered in the argument—none occurs to this Court.

[2.] Upon the other ground we are equally clear, and for a reason that appears to me to be conclusive.  By the Common Law, suit could not have been brought against John W. Harris as the survivor, jointly with Thomas Wynne as the representative of the deceased co-promiser.  The Act of 1818, *(Prince,* 443,*)* authorizes these parties to be sued together, in the same action. But this Act applies only to *lawful* representatives, and not to trespassers or mere intermeddlers.  For it declares, that no action under it shall be brought, *until twelve months after the probate of the will,* or the granting of letters of administration on the estate.    Even the Act of S. Carolina, of 1789, which protects executors and administrators from suits, *until nine months after the death of testator or intestate,* has been held not to apply to executors *de son tort.*  1 *Hill,* 50.  But the exemption under our Act, is twelve months, to be computed from the *probate of the will.*    It follows conclusively, therefore, that none but rightful executors or administrators were intended to be embraced in it.  For this reason then, the Court below was right in assuming that no testimony was admissible, to show that Wynne was executor *de son tort.*  It would have contradicted the record.  The judgment is conclusive, *pro hac vice* at least, that Wynne was rightful executor.  It could have been rendered against none other.  And John W. Harris, failing to plead a misjoinder, as he ought to have done, he is estopped from denying that Wynne was the *legal* representative of Thomas P. Harris.

But if the opportunity were allowed him to make the proof, it would be to undertake an impossibility.  How would he set about showing, in this collateral way, that Wynne was made chargeable in the original suit, as executor *de son tort ?*  Fifty acts of interference might be testified to, yet all these he might have performed as rightful executor, and how could it be negatived ?  In the original action, where he is made liable for his wrongful intermeddling, if he pleads *ne unques* executor, the fact of intermeddling is the only issue for the Court.  If he admits the tortious interference, he is chargeable as rightful executor, so that the proceeding is a simple one.  But not so here.  A man dying out of the State, letters of administration may be granted in any County in the State, where he may have effects.    To show, there-

fore, that these acts of intermeddling were not done by Wynne, as rightful executor, Harris would have to take the interrogatories of every Clerk in Georgia: and this done, still it would not appear that it was for any or all of these acts, that he was convicted in the first suit.

Concede, however, in the face of the record, and in the very teeth of the Act of 1818, that this judgment was rendered against Wynne as wrongful executor. Being made personally liable by the recovery, and having paid the money, does it lie in the mouth of the principal to contest his right to have it refunded? At any rate, under this record, would not the principal be protected from the rightful executor? An executor *de son tort* cannot collect outstanding debts, having none of the privileges of a rightful executor; besides, he might find it inconvenient, when called on, to exhibit his authority to sue. But here the record to which John W. Harris is a party, is Wynne's warrant. He is but recovering back what he was compelled to pay out for Harris. But in the view which we have taken of this case, it is not necessary to decide this point.

The judgment below is affirmed.